UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEVIN NTABO,

Petitioner,

v.

JULIO HERNANDEZ, et al.,

Respondent.

CASE NO. 2:26-cv-02693-BAT

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Kevin Ntabo, a native and citizen of Kenya, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1 (Petition). He has been detained since December 25, 2025. *Id.*

On July 30, 2026, Petitioner, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, arguing his continued detention under 8 U.S.C. § 1225(b) without a bond hearing violates his Due Process rights under the Fifth Amendment to the United States Constitution. *Id.*

Petitioner seeks an order from the Court: (1) issuing a writ of habeas corpus and directing his release unless, within 14 days, Respondents hold a custody hearing where the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger

and that no alternative to detention can mitigate any risk that his release would present; if the government fails to meet its burden Petitioner must be released on appropriate conditions of supervision, taking into account his ability to pay bond; or alternatively (2) issue a writ of habeas corpus and hold a hearing if warranted and determine that Petitioner's detention is not justified because the government has not established by clear and convincing evidence that Petitioner presents a flight risk or danger in light of available alternatives to detention; and order Petitioner's release with appropriate conditions of supervision if necessary, taking into account Petitioner's ability to pay bond; (3) issue a declaration that Petitioner's ongoing prolonged detention violates the Due Process Clause of the Fifth Amendment; and (5) award Petitioner attorney's fees and costs.[1]

Respondents have filed a return memorandum arguing Petitioner's detention is lawful under 8 U.S.C. § 1225(b) and the Due Process Clause of the Fifth Amendment. Dkt. 6. Petitioner has filed a response/traverse. Dkt. 9.

Having considered the parties' submissions, the balance of the record, and the governing law, the petition (Dkt. 1) is GRANTED, as provided below.

## BACKGROUND

Petitioner is a native and citizen of Kenya who, on February 2, 2017, was admitted into the United States as a non-immigrant B2 visitor with authorization to remain in the United States for a temporary period not to exceed August 1, 2017. Dkt. 7 (Decl. of Ian Bloom ("Bloom Decl.")), ¶ 3. On July 30, 2017, Petitioner departed the United States. *Id.* ¶ 4. On August 13, 2017, Petitioner was admitted into the United States at Newark, New Jersey as a non-immigrant

[1] The Court notes that in one line of the body of the petition, Petitioner appears to request immediate release. Dkt. 1 at 2. But the "prayer for relief" section of the petition and the traverse appear to confirm that he seeks a custody hearing due to his prolonged detention. Dkt. 1 at 18; Dkt. 9 at 8.

B2 visitor with authorization to remain in the United States for a temporary period not to exceed February 12, 2018. *Id.* ¶ 5.

On December 12, 2017, Petitioner was listed as a beneficiary on a Petition for Alien Relative filed with United States Citizenship and Immigration Services ("USCIS") by his then wife. *Id.* ¶ 6; Dkt. 1-2 (Ntabo Decl.). This application was denied on September 27, 2022. *Id.* On February 11, 2018, Petitioner departed the United States. Dkt. 7 (Bloom Decl.), ¶ 7.

On June 3, 2021, Petitioner was admitted to the United States at Philadelphia, Pennsylvania, on a B2 visitor visa, with a period of authorized stay until December 2, 2021. *Id.* ¶ 8; Dkt. 8 (Decl. of Katherine G. Collins ("Collins Decl."), Ex. A (Form I-213). On November 7, 2022, while in the United States, Petitioner applied for special immigrant status with United States Citizenship and Immigration Services – a VAWA ("Violence Against Women Act") self-petition. Dkt. 7 (Bloom Decl.), ¶ 9; Dkt. 1-2 (Ntabo Decl.) ¶ 3. The adjudication of that application appears to remain pending. *Id.*

On August 15, 2024, Petitioner departed the United States with advanced parole, and shortly thereafter, on September 1, 2024, applied for admission at Seattle, Washington. Dkt. 7 (Bloom Decl.), ¶¶ 10–11. Petitioner was paroled into the United States until August 30, 2025. *Id.*, ¶ 11.

Petitioner again departed the United States on December 7, 2025, with advanced parole, and sought reentry on December 25, 2025, at Seattle, Washington. *Id.*, ¶¶ 12–13; Dkt. 8 (Collins Decl.), Ex. A.

Respondents submit the declaration of Deportation Officer Ian Bloom who states that on December 25, 2025, "Petitioner applied for admission into the United States in Seattle, Washington." Dkt. 7 (Bloom Decl.) ¶ 13. He states that Customs and Border Protection ("CBP")

officers interviewed Petitioner, and "based at least in part on Petitioner's sworn statements to CBP of having claimed to be a lawful permanent resident to obtain a firearms license", CBP denied Petitioner admission into the United States. *Id.*; Dkt. 8 (Collins Decl.), Ex. A.

CBP issued a Notice to Appear charging Petitioner as an arriving alien, inadmissible under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I), took him into custody, and transported him to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 7 (Bloom Decl.), ¶ 13; Dkt. 8 (Collins Decl.), Ex. A, Ex. B (Order to Detain), Ex. C (NTA).

Petitioner states in his declaration that he believed he was initially detained due to a clerical error in the Advanced Parole document that said his advance parole expired on January 3, 2025, instead of January 3, 2026. Dkt. 1-2 (Ntabo Decl.), ¶ 5. But he states that the CBP officer asked all manner of questions about his application history and his work at King County Correctional Department as a prison guard and his firearm application. *Id.* He states that the CBP officer kept asking if he knew that he had to be a lawful permanent resident to have a firearm and if he had claimed to be one. *Id.* Petitioner states that he kept explaining that he had not but when she kept asking the same question, he began to doubt himself and stated that he may have made a mistake in filling out the form. *Id.* He states the officer used this statement as an admission that Petitioner had falsely claimed to be a lawful permanent resident on his firearms license application and this was the justification for revoking his advance parole. *Id.*

Petitioner appeared with counsel before an Immigration Judge ("IJ") in Tacoma, Washington, on January 26, 2026. Dkt. 7 (Bloom Decl.), ¶ 14. At the hearing, the IJ sustained the charge of removability. *Id.*

At a subsequent master hearing on February 18, 2026, the IJ instructed Petitioner to submit all evidence in advance of his merits hearing. *Id.*, ¶ 15. Petitioner had submitted his

VAWA Cancellation application and the IJ informed Petitioner he would subpoena documents regarding Petitioner's firearms license application and set another master calendar hearing for that purpose. Dkt. 1-2 (Ntabo Decl.) ¶ 7.

Petitioner states in his declaration that at a March 2026 master calendar hearing the IJ had subpoenaed his firearms application and he was provided a copy. *Id.*, ¶ ¶ 7-9. He states the application shows he did not represent himself to be either a lawful permanent resident or a U.S. citizen, that he clearly identified himself as a Kenyan citizen and gave his I-94 number and a copy of his employment authorization.[2] *Id.* Petitioner states that the IJ adjourned the matter to the end of March 2026 for the merits hearing. *Id.* He states the merits hearing commenced at the end of March 2026, and testimony was taken but the IJ was unable to complete the hearing that day and it was adjourned to April 22, 2026.[3] *Id.*

On April 22, 2026, Petitioner appeared with counsel at his merits hearing, at which the IJ denied his application for relief and ordered him removed to Kenya. Dkt. 7 (Bloom Decl.), ¶ 16; Collins Decl., Ex. D (IJ Removal Order). Petitioner, through counsel, appealed that decision to the Board of Immigration Appeals ("BIA") on May 19, 2026, where the appeal remains pending. Dkt. 7 (Bloom Decl.), ¶ 16.

On June 25, 2026, Petitioner states that USCIS issued him a notice informing him the agency had made a finding of prima facie eligibility on his VAWA self-petition. Dkt. 1-2 (Ntabo Decl.), ¶ 12. Petitioner remains detained at the NWIPC. Dkt. 7 (Bloom Decl.), ¶ 18.

---

[2] The Court notes that Petitioner's declaration states that a copy of the firearm application is attached to his petition, but it does not appear to be included in the record. The Court also notes that while Petitioner argues his advanced parole was improperly revoked for this reason, he does not argue he is entitled to release separately on this basis.

[3] The Court notes that Respondents do not provide any information regarding the March 2026 appearances Petitioner references, but they also do not submit and evidence refuting Petitioner's description of those appearances.

## DISCUSSION

A. Statutory Basis for Petitioner's Detention

Title 8 of the United States Code §§ 1225, 1226, and 1231 govern immigration detention. "Where [a noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

Section 1225 applies to "applicants for admission"—noncitizens[4] who "arrive[ ] in the United States," or are "present" in the United States but have "not been admitted." 8 U.S.C. § 1225(a)(1). Applicants for admission fall into two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2). *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1), applies to, among others, noncitizens initially determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation. *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as the catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)" (with specific exceptions that neither party argues are applicable here). *Jennings*, 583 U.S. at 287-88 (citing §§1225(b)(2)(A), (B)).

"Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an Immigration Judge or review of the removal order." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) (citing 8 U.S.C. § 1225(b)(1)(A)(i)). But, where a noncitizen "indicates either an intention to apply for asylum ... or a fear of persecution," the inspecting immigration officer must refer that noncitizen for an

[4] The Court uses the term "noncitizen" as equivalent to the term "alien" that is used in the statute. *See Nasrallah v. Barr,* 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). Thereafter, if the asylum officer determines that the noncitizen has a credible fear of persecution, then the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *Banda*, 385 F. Supp. 3d at 1112.

Under § 1225(b), "the only opportunity for a noncitizen to be released pending a decision on the asylum application is temporary parole 'for urgent humanitarian reasons or significant public benefit.'" *Banda*, 385 F. Supp. 3d at 1112 (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also* 8 C.F.R. §§ 212.5(b), 235.3.

And the "statute does not impose 'any limit on the length of detention' pending a decision on the asylum application and does not authorize bond hearings or release on bond." *Banda*, 385 F. Supp. 3d at 1112 (quoting *Jennings*, 583 U.S. at 296-301). As the Supreme Court in *Jennings*, held, "1225(b)(1) mandates detention 'for further consideration of the application for asylum,' § 1225(b)(1)(B)(ii), and § 1225(b)(2) requires detention 'for a [removal] proceeding,' § 1225(b)(2)(A). The plain meaning of those phrases is that detention must continue until immigration officers have finished 'consider [ing]' the application for asylum, § 1225(b)(1)(B)(ii), or until removal proceedings have concluded, § 1225(b)(2)(A)." *Jennings*, 583 U.S. at 299.

The Court notes that the parties appear to agree § 1225(b) governs Petitioner's current detention. Dkt. 1 at 14 ("Respondents currently detain Mr. Ntabo pursuant to 8 U.S.C. § 1225(b)"); Dkt. 6. The Court will accept the parties' representations and will analyze the petition accordingly.

B. Due Process/The *Banda* Test

The right to be free from physical restraint by the Government is "at the heart of the liberty that [the Due Process Clause of the Fifth Amendment] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Even if the statutory terms of § 1225(b) do not require a bond hearing, Petitioner's continued detention must still comport with due process. *Banda*, 385 F. Supp. 3d at 1113-1117. Neither the Supreme Court nor the Ninth Circuit have settled on a test for assessing the constitutionality of prolonged mandatory detention. *Banda*, 385 F. Supp. 3d at 1113.

This district has held that "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process" *Banda*, 385 F. Supp. 3d at 1106, 1117; the Court reviews the following factors: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Id.* at 1106 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)). Where due process requires a bond hearing, the Government must provide clear and convincing evidence to justify the noncitizen's continued detention. *Id.* at 1107.

1. Length of Detention

Under the *Banda* analysis, the length of detention is "the most important factor." *Id.* at 1118. Petitioner has been in custody for over 8 months.

The Court finds that this factor favors Petitioner. *See Banda*, 385 F. Supp. 3d at 1118 (finding this factor favored petitioner and granting bond hearing after 17 months detention under § 1225(b) and collecting cases granting bond hearings after nine, ten, sixteen, and nineteen months detention); *Cardozo v. Bostock*, No. 2:25-CV-00871-TMC, 2025 WL 2592275, at *1 (W.D. Wash. Sept. 8, 2025) (finding this factor favored petitioner and granting bond hearing

after 10 months detention under § 1225(b)); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (finding this factor favored petitioner subject to prolonged detention under § 1226(c) and granting bond hearing after seven months).

2. Likely Duration of Future Detention

The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal A.*, 358 F. Supp. 3d at 859).

Here, on April 22, 2026, an IJ ordered Petitioner removed to Kenay and denied his applications for relief. Dkt. 8 (Collins Decl.), Ex. D (IJ Order). Petitioner appealed this decision to the BIA on May 19, 2026, and his appeal remains pending. Courts in this District have observed that BIA appeals can take over six months. *See Nguyen v. Scott*, C25-1988-SKV, Dkt. 15, pgs. 3-4 (citing *Toktosunov v. Wamsley*, 25-cv-1724-TL, 2025 WL 3492858, at *5 (W.D. Wash. Dec. 5, 2025)). And if Petitioner's appeal to the BIA is denied he has the right to appeal to the Ninth Circuit Court of Appeals. Recent cases have noted it can take approximately 6 to 12 months from the date of the notice of appeal to oral argument and, following argument, most cases take three months to a year for the Court of Appeals to decide the case. *See, e.g., Tavurov v. Noem*, 819 F. Supp. 3d 1209, 1221 (W.D. Wash. February 6, 2026).

While the Court cannot definitively determine the duration of Petitioner's future detention, based on the current record, it appears Petitioner will likely face many more months and potentially years in detention. *Barraza v. ICE Field Off. Dir.*, No. C23-1271-BHS-MLP, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023), *report and recommendation adopted sub nom. Barraza v. United States Immigr. & Customs Enf't Field Off. Dir.*, No. C23-1271 BHS,

2024 WL 518945 (W.D. Wash. Feb. 9, 2024); *Banda*, 385 F. Supp. 3d at 1119 (finding this factor weighed in petitioner's favor where petitioner who had "only recently" appealed the IJ's denial of his case to the BIA faced a process that could "take up to two years or longer"); *Hong v. Mayorkas*, 2:20-cv-1784-RAJ-TLF, 2021 WL 8016749, at *4 (W.D. Wash., June 8, 2021) (finding this factor favored petitioner where he faced "an additional 15 to 38 months" in detention because he was at the "earliest stages" of pursuing a petition for review before the Court of Appeals).

The Court finds this factor favors Petitioner.

3. Conditions of Detention

Third, the Court considers the conditions of detention. "'The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger the argument that he is entitled to a bond hearing.'" *Barraza*, 2023 WL 9600946, at *6 (quoting *Jamal A.*, 358 F. Supp. 3d at 860). "A claim for punitive detention requires a comparison of the conditions under which civil and criminal detainees 'are held.'" *Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156, 1173 (D. Ariz. 2020) (citation omitted).

Petitioner is detained at NWIPC. In his declaration in support of the petition, Petitioner alleges he is locked in a dorm with about 100 people, is allowed out of his housing area one hour per day and has the opportunity for recreation 4-5 times per week for one hour. Dkt. 1-2 (Ntabo Decl.) at 3-4. He alleges he suffers from anxiety and depression from being incarcerated and that doctors at the detention facility prescribed him trazadone which caused a side effect of prolonged erections and inability to urinate and that staff initially refused to see him for this medical issue until he was finally transported to the emergency room. *Id.* He alleges he is not receiving

adequate dental treatment and is often unable to sleep due to constant noise and 24-hour lighting. *Id.*

Respondents contends that Petitioner has submitted no "facts related to the conditions of his detention." Dkt. 7. But, as discussed above, Petitioner has submitted such facts in the form of a declaration which is unrebutted by the Respondents.

Furthermore, many "courts have [recently] found, detention conditions at NWIPC are 'similar...to those in many prisons and jails.'" *Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025); *Toktosunov*, 2025 WL 3492858, at *5 (W.D. Wash. Dec. 5, 2025) ("Courts in this District have...found that, at this facility, under circumstances similar to that of Petitioner, this factor favors granting a bond hearing."); *Amhirra v. Warden, Nw. Det. Ctr.*, No. 2:25-CV-01376-TL, 2025 WL 3718994, at *7 (W.D. Wash. Dec. 23, 2025) (same); *Doe v. Bostock*, 24-cv-0326-JLR-SKV, 2024 WL 3291033, at *11 (March 29, 2024) (citing cases).

The Court finds this factor weighs in favor of Petitioner.

4. Delays in Removal Proceedings

The fourth and fifth factors consider the nature and extent of any delays in the removal proceedings caused by Petitioner and the government, respectively. "Petitioner is entitled to raise legitimate defenses to removal ... and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Martinez v. Clark*, No. 18-1669, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *R & R adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (citations and internal quotation marks omitted).

Yet Courts should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a

determination that the [noncitizen] must be released because of the length of his incarceration." *Id.* (citations and internal quotation marks omitted).

With respect to the Respondents, "[i]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable.... Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).

Even if "not the result of intentional action on behalf of government officials, th[ese] delay[s] [are] attributable to the Government." *Martinez*, 2019 WL 5968089, at *10 (citing *Sajous*, 2018 WL 2357266, at *11 ("the operative question should be whether the [noncitizen] has been the cause of the delayed immigration proceeding and, where the fault is attributable to some entity other than the [noncitizen], the factor will weigh in favor of concluding that continued detention without a bond hearing is unreasonable")); *Dukuray v. Decker*, No. 18-2898, 2018 WL 5292130, at *4 (S.D.N.Y. Oct. 25, 2018) (weighing delay caused by immigration court in favor of the petitioner)).

The record shows that Petitioner first appeared in immigration court on January 26, 2026, where the IJ sustained the charge of removability. At a second master calendar hearing, in February 2026, Petitioner had submitted his VAWA Cancellation application and the IJ informed Petitioner he would subpoena documents regarding Petitioner's firearms license application and set another master calendar hearing for that purpose. In March 2026, the IJ had received the results of the subpoena and set a date toward the end of March 2026 for the merits hearing. The merits hearing commenced at the end of March 2026, and testimony was taken. The IJ ran out of time to complete the hearing and set another date for April 22, 2026. On April 22, 2026, the

merits hearing resumed and concluded and the IJ denied Petitioner's VAWA Cancellation application and ordered him removed.

The record shows that Petitioner has not caused any delays that should be reasonably attributed to him, nor do the Respondents contend that he has. There is nothing in the record to indicate that Petitioner has engaged in dilatory tactics.

Petitioner argues that Respondents caused delays because he continued Petitioner's proceedings to investigate an "immaterial matter" to whether Petitioner qualified for the relief he was seeking before the court and adjourned Petitioner's hearing to accommodate other cases on his docket. Dkt. 1 at 14; Dkt. 9 at 3. While it appears there were some adjournments made by the IJ, the Court cannot conclude based upon the current record, that the continuance to subpoena Petitioner's firearms application was to investigate an "immaterial matter" nor does Petitioner explain why this evidence was immaterial to the proceedings. Nor does Petitioner identify what specific adjournment was made "to accommodate other cases on the docket." Yet, it does appear the adjournments were made at the behest of the IJ, not Petitioner.

Accordingly, the Court finds that the fourth and fifth factors on balance are neutral or weigh slightly in favor of Petitioner.

5. Likelihood of Final Order of Removal

The final factor involves consideration of "'the likelihood that the final proceedings will culminate in a final order of removal.'" *Banda*, 385 F. Supp. 3d at 1120 (quoting *Jamal A.*, 358 F. Supp. 3d at 860).

The Court declines, at this stage, to speculate regarding the outcome of Petitioner's appeal to the BIA, or any potential subsequent appeal to the Ninth Circuit. The Court finds the sixth factor to be neutral.

C. Weighing the Factors

In sum, the Court finds that three factors weigh in favor of granting Petitioner a bond hearing, and the remaining factors are either neutral or weigh slightly in favor of Petitioner. Accordingly, Petitioner's detention has become unreasonably prolonged and due process requires a bond hearing.

D. Bond Hearing

Petitioner requests that the Court issuing a writ of habeas corpus and directing his release unless, within 14 days, Respondents hold a custody hearing where the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger and that no alternative to detention can mitigate any risk that his release would present and, if the government fails to meet its burden, Petitioner must be released on appropriate conditions of supervision, taking into account his ability to pay bond. Dkt. 1.

Consistent with the practice of this District, the Court will order that a bond hearing be held before an immigration judge within fourteen days of this Order. *See, e.g., Toktosunov*, 2025 WL 3492858, at *6; *Maliwat*, 2025 WL 2256711, at *10; *Nguyen v. Scott*, 25-1988-SKV, Dkt. 15 (W.D. Wash. Jan. 26, 2026). At the hearing the Respondents are properly held to a clear and convincing standard of proof, *see Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), and, if they fail to meet that burden, Petitioner's financial circumstances and alternative release conditions must be considered, *see, e.g., Toktosunov*, 2025 WL 3492858, at *6; *Maliwat*, 2025 WL 2256711, at *10; *Nguyen*, 25-1988-SKV, Dkt. 15. A contemporaneous record must also be made of the hearing. *Singh*, 638 F.3d 1196.

**CONCLUSION**

For these reasons, the Court GRANTS the habeas petition (Dkt. 1) as provided below. The Court finds Petitioner's ongoing and prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution. The Respondents are directed to:

A. Hold a bond hearing **to occur within 14 calendar days** of this order. The bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). There must be a contemporaneous record of the hearing, the Respondents bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community and, if they fail to meet that burden, Petitioner's financial circumstances and alternative release conditions must be considered.

B. Or, in the alternative, Respondents shall immediately release Petitioner under appropriate conditions of release.

C. The parties are directed to file, on or before **September 16, 2026**, a joint status report with the Court regarding the bond hearing and whether Petitioner has been released.

D. The Court will entertain an appropriate post-judgment motion for attorney fees and costs.

DATED this 28th day of August, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge